# JUNE 4, 1941

### JACK BARROW V. THE STATE.

No. 21584. Delivered April 30, 1941.
Rehearing Denied June 4, 1941.

The opinion states the case.

*Joe Bailey Morris* and *Baskett & Parks,* all of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State, on submission.

BEAUCHAMP, Judge.

Appellant was convicted for murder with malice, it being charged that he killed Otis Jenkins on the 14th day of October, 1939, by shooting him with a pistol. The jury assessed a penalty of ninety-nine years in the penitentiary.

The record is before us without bills of exception, and the first error complained of is that there was insufficient evidence to show malice. While the statement of facts in the case is not lengthy, we would find difficulty in stating the case clearly and fully in view of the testimony presented. However, we are of the opinion that the jury was authorized to return the verdict which they did and that it is beyond the province of this court to disturb their finding on this assignment. Unsatisfactory as the evidence appears to be, it was the duty of the jury to pass on it and not this court.

The oral argument and brief in behalf of appellant present insistently that the jury assessed the heavy penalty because of appellant's relationship to his outlaw brothers whose careers were so recently before the public and remembered by practically every man qualified to do jury service. In his motion for new trial he set up misconduct of the jury, alleging discussions concerning his brothers and others. The attorney who argued the case invited the kind and character of discussion which he alleged took place and it might have been expected to follow naturally as a result of his argument, but the very cautious conduct of the jury is highly commendable and gives no ground whatever for the allegations in the motion for a new trial, as clearly disclosed by their examination on a hearing.

The facts need no discussion as they raise no question of law for our consideration.

Appellant complains of the action of the court in failing to grant him a new trial because of the newly discovered evidence of Joe Metz, who was said to be in the State of Colorado at the time of the trial and whose whereabouts were unknown. No motion for a continuance was presented based on his absence. It is not disclosed that any diligence was used to secure his testimony and the nature of it, as best we understand the record, was impeaching testimony, so remote that its admissibility would be very questionable had the witness been present at the time. No authorities cited by him remotely sustain any contention made, and we deem it unnecessary to enter into a further discussion.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant contends in his motion for a rehearing that the testimony herein shows to an extent that reasonable minds can not differ thereon that appellant could not be guilty of any greater offense than murder without malice.

The State's testimony does show that appellant was having some kind of an argument in what was known as the Dreamland Cafe on the Eagle Ford road in Dallas, such argument being

had with Jack Parish, a nineteen year old boy; that the deceased, Otis Jenkins, whom appellant did not know, and who doubtless did not know appellant, was present, and the witness Parish said he heard appellant cursing some one, evidently the witness, and Jenkins said to appellant: "Friend, if you want to pick on somebody don't pick on a kid, pick on a man," Parish being referred to as a kid. Barrow then said: "I can pick on a man," and hit the deceased on the shoulder and then grabbed a chair leg and hit the deceased, and deceased then grabbed the chair leg away from appellant and they went to fighting with fists. The deceased got the best of the fight and bruised appellant considerably therein, and at such time L. C. Barrow, a brother of appellant, appeared and presented a large calibred pistol, and ordered every one to stand back. The deceased was then standing some eight or ten feet from appellant, whereupon appellant pulled from his clothing a 25 calibre pistol and shot deceased through the heart, at which time the deceased was standing with nothing in his hands. In brief this is a portion of the State's testimony upon which it relied for a conviction.

The appellant strenuously contends that this was a mutual combat, and on account of injuries received by appellant in the fight with deceased his mind was so inflamed by a sudden passion aroused by an adequate cause that same was incapable of a cool reflection, and could not have formed a malicious intent at such time; that if same be a murder at all, it could only be such without malice.

Appellant testified that he was forty-six years old and married and had a family. That he did not know the deceased, but had been informed that deceased and Jack Parish had said they were going to kill him. That he had been in some previous difficulties, and he believed and had been told that Parish was in one of the previous difficulties in which appellant had been roughly used. That he was sitting down in the Dreamland Cafe talking to some one when some one, whom he afterwards ascertained was deceased, walked up and said "You sorry son of a bitch, I am going to kill you," and hit him and knocked him down between the counters, and appellant grabbed a stick and went to fighting, and he got so addled that from such time on he did not know what happened; he was beaten into practical insensibility. The deceased, twenty-three years old, struck the first blow.

Evidently the jury did not believe this version of the diffi-

culty, and we confess the conflicting testimony was rather confusing, but it is evident that appellant thought he had some grounds, so his testimony would show, for harboring malice against Parish, whom he claimed was in another fight where appellant was injured, and when Jenkins came to the aid of Parish his attentions changed to the deceased. On cross-examination he said:

"I had never seen Otis Jenkins before that I know of. I can't tell the jury why a rank stranger should walk up and call me a son of a bitch and tell me he was going to kill me unless it was because he was with Parish that was hunting me. So far as I know I don't know that Otis Jenkins has even spoken to me in his lifetime till this day."

Again, the jury evidently refused to accept appellant's version of this affair, and we confess our lack of criticism for so doing.

Malice, so the charge of the court says, is evidenced by a heart regardless of social duty and fatally bent on mischief, the existence of which is evidenced by acts done or words spoken. It seems to us to be unreasonable to expect a jury to accept the statement of appellant as to the inception of this killing. The jury must have taken some of the other witnesses' statement of this transaction, and we do not think it lies within our province for us to say that they should not have done so. Malice can be and often is evidenced by a reckless disregard of the rights of others eventuating in some exhibition of a heart fatally bent on mischief, regardless of toward whom the mischief might be directed, and under these facts as herein developed we are led to the belief that the jury were justified in saying that appellant's heart was regardless of the duty he owed to society and fatally bent on doing mischief.

Taking the State's testimony as evidenced by its witnesses, we think the proof is sufficient to show the presence of malice upont he part of appellant when he fired the shot that took the life of Otis Jenkins. We are not willing to say that because two persons enter into a mutual combat that eventuates in the death of either, that no higher punishment can be assessed than one for murder without malice.

In this instance the State showed that appellant's brother seemed to be in control of the situation when the killing oc-

curred; such altercation seemed to have ceased, with the deceased person standing some eight or ten feet away from appellant, at which time appellant drew his pistol and shot Jenkins. The jury saw fit to say such shot was actuated by malice, and we do not see fit to question their judgment therein.

We do not think the court was in error when it failed to grant a new trial on account of the absence of Joe Metz. Appellant evidently knew what Metz would testify to, because it was claimed that Metz had told appellant his story; appellant knew that Metz was gone from town, yet in his second application for a continuance he made no mention of the witness Metz, nor had he asked for a subpoena for him, nor had he attempted to take his deposition, giving as his reason therefor that he did not know where Metz was located. We are not impressed with the showing of diligence made by appellant in such manner; nor do we think the witness Metz was aught but an attempt at an impeachment of the witness Pendergrass, and new trials are ordinarily not granted for the purpose of allowing impeaching testimony of a witness. It is also hardly probable that such witness' testimony would have changed the result of the trial. See Branch's P. C., p. 124, Sec. 192, and authorities there cited.

Appellant also complains because the trial court failed to embody in his charge to the jury a limitation upon the testimony of appellant wherein it was shown that appellant had been charged with a felony and theft. It is conceded that no objection was leveled at the court's charge on account of such omission, but such error is claimed to be fundamental. In support of such proposition he cites the case of Mahoney v. State, 26 S. W. 622, 33 Tex. Cr. R. 388. This case was decided in the year 1894, long before the passage of Art. 658, et seq. C. C. P., in the year 1913, which now requires the objections to the trial court's charge to be made in writing, filed and called to the court's attention prior to the time such charge is read to the jury. Such decision is no longer applicable, but has long since been superseded by Art. 658, supra. We also note that in the State's controverting motion for a new trial it is there stated under oath that the court's charge when first prepared contained a paragraph limiting such testimony, and at the request of appellant's attorney the court took such paragraph out of such charge before same was delivered to the jury. We think no error was evidenced thereby.

It is contended that the severity of the verdict was caused

by the fact that appellant was the brother of Clyde and Buck Barrow of doubtful fame as violators of the law. On motion for a new trial this matter was gone into by questioning the jury, and it seems that the only allusion thereto was made by the attorney who defended appellant in the trial in his argument before the jury, and no injurious allusion was made by the jury to such relationship in their deliberations.

We think this cause was properly tried, as shown by the record, and the motion is therefore overruled.